09-3865-cr
United States v. Bonczek

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 19th day of August, two thousand ten.

PRESENT:  REENA RAGGI,
    RICHARD C. WESLEY,
    PETER W. HALL,
       *Circuit Judges.*

------------------------------------------------------------

UNITED STATES OF AMERICA,

    *Appellee,*

   v.            No. 09-3865-cr

JAMES BONCZEK,

    *Defendant-Appellant.*

------------------------------------------------------------

APPEARING FOR APPELLANT:  SUSAN R. NECHELES (Joshua R. Geller, *on the brief*), Hafetz & Necheles, New York, New York.

APPEARING FOR APPELLEE:  TELEMACHUS P. KASULIS, Assistant United States Attorney (Katherine Polk Failla, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Paul A. Crotty, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court entered on September 11, 2009, is AFFIRMED.

James Bonczek, who was found guilty after a bench trial of both possessing and receiving child pornography, see 18 U.S.C. § 2252A(a)(5)(B), 2252A(a)(2), appeals his conviction on the ground that it was based on evidence that should have been suppressed. The government concedes that, after police took preliminary steps toward applying for a search warrant but before the warrant was signed by a judge, the police unlawfully entered Bonczek's apartment. On appeal, Bonczek submits that the warrant supporting the search of his apartment was (1) not supported by probable cause, and (2) infected by the earlier warrantless police entry into the apartment. "On an appeal from a ruling on a motion to suppress, we review a district court's findings of historical fact for clear error, but analyze de novo the ultimate determination of such legal issues as probable cause . . . ." United States v. Valentine, 539 F.3d 88, 93 (2d Cir. 2008) (ellipsis in original; internal quotation marks omitted). In doing so, we assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Probable Cause

Bonczek contends that the state judge who signed the search warrant for his apartment could not have made an independent probable cause determination without viewing the images alleged to depict a "lewd exhibition of [children's] genitals," N.Y. Penal Law § 263.00(3), or assessing a sufficiently particularized description of them, neither of which the judge did.[1] Courts are divided on a similar question based on the terms of an analogous federal statute. Compare United States v. Brunette, 256 F.3d 14, 18-19 (1st Cir. 2001) (holding that judge ordinarily cannot determine whether image "depicts a lascivious exhibition of genitals . . . without either a look at the allegedly pornographic images, or at least an assessment based on a detailed, factual description of them"), with United States v. Simpson, 152 F.3d 1241, 1247 (10th Cir. 1998) (concluding that affidavit describing unlawful materials believed to be in defendant's possession as "child pornography" did not render warrant invalid for lack of probable cause because "the words 'child pornography' need no expert training or experience to clarify their meaning" and "the judge understood what type of evidence was required" (emphasis in original; internal quotation marks

---

[1] Under federal law, child pornography constitutes "any visual depiction" the production of which "involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(A). "Sexually explicit conduct," in turn, is defined to include the "lascivious exhibition of the genitals or pubic area of any person." Id. § 2256(2)(A)(v). In New York, the related crime of possessing a sexual performance by a child is defined as possessing "any performance which includes sexual conduct by a child less than sixteen years of age." N.Y. Penal Law § 263.16. The term "sexual conduct" includes "lewd exhibition of the genitals." Id. § 263.00(3).

omitted)); cf. United States v. Kimbrough, 69 F.3d 723, 727-28 (5th Cir. 1995) (concluding that warrant was sufficiently particularized where it sought materials "used to visually depict a minor engaging in sexually explicit conduct" because "[i]dentification of visual depictions of minors engaging in sexually explicit conduct . . . is a factual determination that leaves little latitude to the officers"); United States v. Koelling, 992 F.2d 817, 821-22 (8th Cir. 1993) (concluding that warrant was sufficiently particularized where it described material sought in language that tracked terms of § 2256, including use of phrase "lascivious exhibition of the genitals or pubic area"). In United States v. Jasorka, we found it unnecessary to decide whether a judge issuing a warrant "was obligated to make her own assessment of the lascivious nature of . . . photographs" because the officers were entitled to rely in good-faith on the warrant that issued. 153 F.3d 58, 58 (2d Cir. 1998); see United States v. Leon, 468 U.S. 897, 919-23 (1984). We reach the same conclusion here.

Bonczek challenges the application of the good-faith exception in this case, arguing that (1) the executing officers "knowingly or recklessly misled" the issuing judge, and (2) the judge "wholly abandoned his judicial role by acting as a 'rubber stamp' for the legal conclusions contained in the [warrant] affidavit." Appellant's Br. at 37. We are not persuaded.

The first point is based on police failure to advise the issuing judge that they had already entered Bonczek's apartment without a warrant. The omission may be criticized generally, but it did not mislead the issuing judge as to the content of the materials at issue.

4

Thus, even if we were to conclude that probable cause requires a more particularized showing of lewdness than was made here, the police's failure to reveal information not relevant to that issue does not preclude application of the good-faith exception. See United States v. Falso, 544 F.3d 110, 128 (2d Cir. 2008) (noting exception inapplicable where applicant fails to disclose "facts that would undermine probable cause"); see also Franks v. Delaware, 438 U.S. 154, 165 (1978); United States v. Reilly, 76 F.3d 1271, 1280 (2d Cir. 1996).

Nor does the record demonstrate the issuing judge's total abandonment of his review responsibilities. The judge was advised that police had been told by Gregory Vega, a security guard at Bonczek's apartment complex, that while he and a maintenance worker were inside Bonczek's apartment investigating a water leak they "observed lewd images of children displayed on . . . Bonczek's computer. These children appeared to be between the ages of . . . 2-7 years old, with genitalia exposed, posed in a sexually explicit manner." Warrant Aff. at 4.[2] A judge may certainly rely on eyewitness accounts of crime in making

---

[2] To the extent Bonczek contends that the warrant application contained false information because it asserted that Vega observed images of multiple children when, in fact, he observed images of only a single child, the argument is without merit. The district court credited the testimony of a police detective that Vega reported observing images of more than one child. Moreover, upon review of the photos taken by Vega at the time Vega observed the images, the district court agreed that the photos depicted more than one child. In light of the special deference we afford factual findings premised on a district court's credibility assessments, see United States v. Mendez, 315 F.3d 132, 135 (2d Cir. 2002), we identify no clear error in the district court's determination that the statement in the warrant application referring to lewd images of "children" was accurate.

a probable cause determination.  See, e.g., United States v. Hernandez, 85 F.3d 1023, 1028 (2d Cir. 1996) ("A detailed eye-witness report of a crime is self-corroborating; it supplies its own indicia of reliability." (alteration and internal quotation marks omitted)).  Thus, Bonczek's abandonment argument is simply a variation of his claim that more particularized information was necessary to support a probable cause finding of lewdness.  Even if we were to agree, that would be insufficient to demonstrate that the judge either abandoned the "neutrality and detachment demanded of a judicial officer when presented with a warrant application for a search and seizure" or "allowed himself to become a member, if not the leader, of the search party" and therefore functioned as "an adjunct law enforcement officer."  Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 326-27 (1979).  Bonczek does not suggest that the judge failed to read the application before he signed it.  See United States v. Decker, 956 F.2d 773, 777 (8th Cir. 1992).  At a minimum, the warrant affidavit "provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause."  United States v. Leon, 468 U.S. at 926.  In these circumstances, we identify no abidication of the issuing judge's duty precluding application of the good-faith exception.

    2.    Independent Source Doctrine

Bonczek submits that even if we reject his probable cause challenge, the district court erred in refusing to suppress evidence based on the government's initial unlawful entry into

6

his apartment. Like the district court, we conclude that the independent source doctrine defeats this argument.[3]

The independent source doctrine permits the admission of otherwise excludable evidence where law enforcement officers obtain a valid search warrant based on "sources [that are] wholly unconnected with the [unlawful] entry and [were] known to the agents well before the[ir] initial entry." Segura v. United States, 468 U.S. 796, 814 (1984). To demonstrate its entitlement to this exception, the government must show that "(1) the warrant . . . [is] supported by probable cause derived from sources independent of the illegal entry; and (2) the decision to seek the warrant [was] not . . . prompted by information gleaned from the illegal conduct." United States v. Johnson, 994 F.2d 980, 987 (2d Cir. 1993).

The first requirement is easily satisfied in this case. As the district court observed, "the most important element of the warrant [application] was the assertion that Mr. Vega observed 'lewd images' of children, 'with genitalia exposed, posed in a sexually explicit manner,' displayed on . . . Bonczek's computer and that [Vega] reported this information to the police." United States v. Bonczek, No. 08 Cr. 361, 2008 WL 4615853, at *6 (S.D.N.Y. Oct. 16, 2008) (quoting warrant affidavit). This information clearly derived from sources independent of the warrantless police entry. In urging a different conclusion, Bonczek contends that the police entry and viewing of his computer screen likely influenced the decision to characterize the images Vega observed as "lewd." In fact, Vega took

_____

[3] We do not reach the government's alternative argument relying on the inevitable discovery doctrine.

7

photographs of the images he observed and provided those photographs to the police before any officers ever entered Bonczek's residence.

As to the second Johnson requirement, Bonczek submits that testimony at the suppression hearing indicates that the purpose of the warrantless entry into his apartment was to verify the information provided by Vega. This does not defeat application of the independent source doctrine. The district court found that the police "would have obtained a warrant even without the information confirmed by the illegal entry." Id. at *8. We identify no error, much less clear error, in this factual finding, which satisfies the second element of the independent source test, and which is supported by evidence establishing that, when presented with Vega's information, the police immediately (1) referred the case to the supervisor of the unit in charge of investigating child pornography; (2) called the Manhattan District Attorney's night complaint room to inquire about obtaining a warrant; and (3) placed a detective with warrant expertise on duty status. See Anderson v. Bessemer City, 470 U.S. 564, 574 (1985) (noting that on clear-error review court will not disturb factual findings that are "plausible in light of the record viewed in its entirety"); United States v. Salim, 549 F.3d 67, 74 (2d Cir. 2008) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (internal quotation marks omitted)).

Accordingly, the district court reasonably relied on the independent source doctrine in concluding that the initial warrantless entry did not demand suppression.

3.    Conclusion

8

We have considered Bonczek's remaining arguments on appeal and conclude that they lack merit. For the foregoing reasons, the district court's September 11, 2009 judgment is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court